IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES DEPARTMENT OF     )
TRANSPORTATION, ex *rel.*        )
AUGUST W. ARNOLD,               )
          Plaintiff,            )
                                )
     v.                         )   Civil Action No.  03-1580
                                )
CMC ENGINEERING, et al.         )
          Defendants.           )

MEMORANDUM and ORDER

Gary L. Lancaster                          February $\mathcal{6}$, 2007
U.S. District Judge

     This is a qui tam action under the Federal False Claims

Act.  Relator, August Arnold, alleges that defendants, various

engineering firms that provided services to the Pennsylvania

Department of Transportation, falsified credentials in order to

obtain higher pay rates, and bribed PennDOT officials in order

to obtain these higher pay rates, and other benefits.  Relator

claims that these action violate the Federal False Claims Act.

31 U.S.C. §§ 3729-3732.  Plaintiff seeks damages, on behalf of

the United States, a portion of which will be payable to him

should he prevail in this case.

     Eight motions to dismiss the Second Amended Complaint are

currently before the court [doc. nos. 160, 162, 163, 165[1], 167,

---

[1]   Defendants CMC Engineering and Erdman Anthony
      Associates filed a joint motion.  The remaining
      defendants each filed their own motion to dismiss.

169, 170, 173]. Although each defendant has filed its own motion, for the most part, defendants make similar arguments. Defendants contend that relator cannot satisfy numerous statutory, and jurisdictional, requirements under the Act. Defendants also argue that relator has insufficiently pled his fraud and conspiracy claims against them. Relator claims that he has satisfied all statutory requirements and has included sufficient detail in his complaint to survive a motion to dismiss.

Because we find that relator has not established that any defendant presented a false claim to the Federal government, made a false statement in order to get a false claim paid or allowed by the Federal government, or conspired to get a false claim paid or allowed by the Federal government, we will dismiss the Second Amended Complaint.[2] In addition, because relator has been granted leave, twice, to amend his Complaint, most recently with prior knowledge of the key legal objections that defendants would raise to it, we will do so with prejudice.

---

[2]     In ruling on these motions, we assume that plaintiff's complaint survives the jurisdictional challenge against at least one defendant. However, we do not reach that, or the myriad of other objections raised by defendants, some of which appear to have significant merit, because none of relator's claims fit within the parameters of a Federal False Claims Act case.

2

General's office.   When no action was taken there, relator

reported his findings to the U.S. Department of Transportation.

A US DOT official came to relator's home in May of 2001 to

investigate the matter.   Thereafter, a PennDOT official was

sent from Harrisburg to investigate the matter.   After the

PennDOT official's visit, PennDOT conducted its own audit which

revealed that of 600 consultant inspectors reviewed, 139 had

flawed credentials.   Significant repayments of the resulting

overcharges have been made by some of the defendants to

PennDOT.

## II.   STANDARD OF REVIEW

Defendants have filed motions to dismiss pursuant to

Rules 9(b), 12(b)(1), and 12(b)(6).   Fed. R. Civ. P. 9(b), Fed.

R. Civ. P. 12(b)(1), and Fed. R. Civ. P. 12(b)(6).

Under Rule 9(b) all averments of fraud must be stated

with particularity.   Averments under the False Claims Act must

meet the heightened pleading standards of Rule 9(b).   U.S. el

rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,

149 F.3d 227, 234 (3d Cir. 1998).   The purpose of Rule 9(b) is

to "provide defendants with notice of the precise misconduct

that is alleged and to protect defendants' reputations by

safeguarding them against spurious allegations of immoral and

4

fraudulent behavior." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Rule 9(b) can be satisfied by describing the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into the fraud allegations. Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 173 n. 10 (3d Cir. 2002).

A Rule 12(b)(1) motion is a challenge to this court's subject matter jurisdiction. Where a federal court lacks jurisdiction over the subject matter of a claim it must be dismissed. Kokkonen v. Guardian Life Insur. Co. Of America, 511 U.S. 375, 377 (1994). As a general rule, the party whose burden it is to plead jurisdiction is not provided the presumption of truth as to any facts pleaded in the complaint that must be resolved in answering the jurisdiction question. Dunleavy v. County of Delaware, 123 F.3d 734, 736 n.2 (3d Cir. 1997) (stating general rule, but finding it inapplicable on the facts). In addition, where a federal court's jurisdiction is at issue, a court may look beyond the pleadings to satisfy itself as to the existence, or nonexistence, of jurisdiction. Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

A Rule 12(b)(6) motion challenges the ability of the complaint to state a claim upon which relief can be granted. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiff will prevail in the end, or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). While deference is given to a plaintiff in terms of factual allegations and inferences, we need not credit bald, conclusory allegations, or legal conclusions cast in the form of factual allegations. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Moreover, the plaintiff must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. Fed. R. Civ. P. 8(2)(a). We do not consider matters outside the pleadings.

III.  DISCUSSION

    A.  Summary of Contentions

      Relator brings his case under sections 3729(a)(1),
(a)(2), and (a)(3) of the False Claims Act.  These sections
provide for liability against:

    (a) Any person who--

      (1) knowingly presents, or causes to be
    presented, to an officer or employee of the
    United States Government or a member of the
    Armed Forces of the United States a false or
    fraudulent claim for payment or approval;

      (2) knowingly makes, uses, or causes to be
    made or used, a false record or statement to get
    a false or fraudulent claim paid or approved by
    the Government;

      (3) conspires to defraud the Government by
    getting a false or fraudulent claim allowed or
    paid

31 U.S.C.A. § 3729(a).

      Several defendants contend that relator's FCA claims
cannot survive a motion to dismiss because he has not alleged,
and cannot allege, that any claims were presented to the United
States.  According to these defendants, sections (a)(1),
(a)(2), and (a)(3) of section 3729 all require presentment to
the Federal government, making this factual and pleading
deficiency fatal to each of relator's claims.  Relator and the

7

United States argue that presentment is not a requirement of sections 3729(a)(2) or (a)(3). Furthermore, relator claims that he has adequately pled all necessary elements under the FCA. Because we find that relator has failed to plead that any of the consultants' false claims or statements were made to, approved, paid or allowed by, or involved a conspiracy to defraud the Federal government, we grant defendants' motions to dismiss.

Relator acknowledges that the Consultants made false claims to PennDOT, not to the U.S. DOT.[3] However, relator

---

[3]     In his Second Amended Complaint, relator recites that false statements were made to "PennDOT and U.S. DOT" in an attempt to convert this PennDOT fraud case into a Federal fraud case. This bald assertion cannot save relator's complaint, and tellingly, relator does not even argue that it does. First, the allegation is an edit from the First Amended Complaint which claimed that false statements were made to "PennDOT, and by extension U.S. DOT." In an attempt to avoid the presentment issue entirely, relator simply removed what he saw as the troublesome words from the averment. Secondly, the statement is not supported by the supporting facts alleged in the complaint. Rather, the complaint consistently alleges that claims were made to PennDOT, and were approved by PennDOT under PennDOT contracts, policies, and specifications, and paid by PennDOT, out of PennDOT funds, 80% of which happened to originate with the Federal government. <<<<Filing a complaint in Federal court is not a trivial matter, with endless opportunities to use just the right words to avoid dismissal. PennDOT's funding procedures were, from the start, one of the key issues, and main obstacles, to this case. That relator, and the United States, chose to wait three years, and three complaints, before investigating the issue troubles the

8

claims that he can nevertheless satisfy the requirements of the
False Claims Act in one of several ways:

> (1) because PennDOT receives substantial funding from
>     the U.S. DOT;
>
> (2) because PennDOT is the agent of the U.S. DOT; or
>
> (3) because claims were presented to the U.S. DOT when
>     Federal Highway Administration inspectors reviewed
>     PennDOT project sites and logs.

We disagree that any of these arguments can transform this case
into a Federal False Claims Act case.


### B.   Presentment Requirement

As an initial matter, we must address the presentment
issue.  Several defendants argue that all three sections of the
FCA asserted by relator require formal presentment of a claim
to the Federal government.  These defendants rely heavily on a
recent case from the Court of Appeals for the District of
Columbia Circuit, U.S. ex rel. Totten v. Bombardier Corp., 380
F.3d 488 (D.C. Cir. 2004), which held that subsections (a)(1)
and (a)(2) both require presentment.  While that case includes
a thorough analysis of the issue, it is not controlling on this
court.

---

court.>>>>

9

The Court of Appeals for the Third Circuit has never ruled on whether subsection (a)(2) or (a)(3) includes a presentment requirement. Defendants contend that the Court of Appeals held in Quinn v. OmniCare, Inc., 382 F.3d 432, 438 (3d Cir, 2004) that section (a)(2) includes a presentment requirement. Defendants are wrong. In Quinn, the Court of Appeals considered whether a Medicaid claim that was not false when initially submitted could later become false if medication was returned. Prior to reaching this dispositive issue, the court set forth the requirements of a FCA case, generally, by quoting from one of its earlier opinions, Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176 (3d Cir. 2001). Quinn, 382 F.3d at 438.

Hutchins was brought under section 3729(a)(1), and set forth the requirements under that section only. Quinn was brought under both sections (a)(1) and (a)(2). However, the Court of Appeals imported the section (a)(1) standard from Hutchins into Quinn, but never acknowledged or discussed the impact of injecting a presentment requirement into section (a)(2). This is not surprising because the presentment requirement of section (a)(2) was not at issue in Quinn.

Under those circumstances, we do not find that Quinn holds that section (a)(2) requires presentment to the Federal

10

government.  This is a hotly contested issue, as evidenced by
the volumes of briefing on the matter in this case.  We do not
infer a ruling from our Court of Appeals on it from a case that
did not raise the issue, and includes no discussion of it.

        However, we find that it is not necessary to resolve
this novel legal issue in order to rule on the pending motions.
While there may be a dispute as to whether subsection (a)(2)
and/or (a)(3) includes a formal presentment requirement, there
can be no dispute that the Federal government must be involved
with or impacted by a claim, defined as a demand for money,
under both sections.

        Under subsection (a)(2), a person must be using a false
record or statement in order "...to get a false or fraudulent
<u>claim paid or approved by the [Federal] Government</u>."  31
U.S.C.A. § 3729(a)(2) (emphasis added).  Subsection (a)(2) does
not proscribe using a false record into order to get a false
claim paid by a state government, a private business, or a
personal friend.  It proscribes only actions taken to induce
Federal government payments or approvals.

        Similarly, subsection (a)(3) requires that defendants
conspire to "...<u>defraud the [Federal] Government</u> by getting a
false or fraudulent <u>claim allowed or paid</u>."  31 U.S.C.A. §
3729(a)(3) (emphasis added).  Again, that subsection does not

impose liability on those that conspire to financially defraud anyone other than the Federal government.  The <u>sine qua non</u> of both subsections is Federal government involvement in paying, approving, or allowing false claims.

### C.   PennDOT as the Federal Government

The disputed issue in this case is whether claims made to, and payments, allowances, and approvals made by, PennDOT can somehow qualify as Federal government claims, payments, allowances, or approvals.  Relator claims that they can because PennDOT receives Federal funding, because PennDOT is the U.S. DOT's agent, or because Federal Highway Administration inspectors reviewed PennDOT job sites and log books.  We reject each of relator's arguments.

### 1.   Federal Funding

The fact that PennDOT receives Federal grant money does not convert PennDOT claims, payments, allowances, approvals, or conspiracies into U.S. DOT claims, payments, allowances, approvals, or conspiracies.  Relator and the United States rely heavily on the definition of claim found in section 3729(c) to support their arguments to the contrary.  The FCA defines a claim as:

12

> any request or demand, whether under a contract
> or otherwise, for money or property which is
> made to a contractor, grantee, or other
> recipient if the United States Government
> provides any portion of the money or property
> which is requested or demanded, or if the
> Government will reimburse such contractor,
> grantee, or other recipient for any portion of
> the money or property which is requested or
> demanded.

31 U.S.C.A. 3729(c).

Simply put, a claim is a demand for money from the Federal government. While the definition of "claim" includes grantees of Federal funds, we do not take that to mean that a claim made to a recipient of Federal funding is the automatic equivalent of a claim made to the Federal government. If that were the case, all claims, or requests for payments or approvals, made to any entity that has ever received Federal funding would be actionable under the FCA. See <u>U.S. ex rel. Totten v. Bombardier Corp.</u>, 380 F.3d 488, 496 (D.C. Cir. 2004). This result would go beyond the FCA's limited purpose -- to prohibit fraudulent claims that cause or would cause <u>economic loss to the Federal government</u>. <u>Hutchins</u>, 253 F.3d at 179 (emphasis added). Such a reading would also change the language of the statute from "...if the United States Government <u>provides</u> any portion of the money or property which is requested..." to "...if the United States Government <u>has provided</u> any portion of the money or property which is

13

requested...", and violate sound principles of statutory
construction.  See Totten, 380 F.3d at 493.

     Where the Federal government reimburses a grantee by
reviewing a specific claim filed by a third party, or where the
Federal government makes a payment either to a state agency as
intermediary, or directly to the third party, in reaction to a
particular claim, the Federal government feels an economic
impact as a direct result of the false claim.  See Totten, 380
F.3d at 493.  However, where the Federal government provides a
lump sum of funding to an agency, with instructions that it
administer and disburse the monies, the economic effect is felt
by the Federal government upon disbursement to that agency.
The filing of specific claims to the agency for payment out of
those previously provided Federal funds has no economic impact
on the Federal government.  Relator's complaint alleges that
the latter factual situation applies in this case.  As such,
the complaint is defective.

     While relator, and the United States[4], now argue in their

_____

[4]   Notably, the United States denied all knowledge
      regarding PennDOT's financing in its First Statement of
      Interest, even though funding issues were central to
      the legal issues raised in the first round of motions
      to dismiss.  Inexplicably, the United States, as well
      as relator, now has a wealth of knowledge regarding
      these matters.  However, these extra-complaint
      allegations cannot be considered on a motion to
      dismiss.  Nor could they carry much weight, regardless,

                              14

briefs, without any supporting evidence, that the Federal
government does not disburse funds to PennDOT until after
claims are filed by PennDOT's contractors, these facts do not
appear in the Complaint.  Rather, in the complaint all payments
are made by PennDOT, under contracts between PennDOT and the
consultants, and pursuant to PennDOT rules and regulations.
Such facts, which are the only facts that we may consider on a
motion to dismiss, do not fall within the reach of the FCA.

Nor do we believe that relator should be given yet
another opportunity to conform his factual allegations to the
legal arguments raised.  Facts regarding PennDOT's funding and
administration of claims have been central to this case since
it was filed in 2003.  The "new" facts referenced in relator's
and the United State's briefs were knowable to the same extent
three years ago as they are knowable today -- there is no
suggestion that PennDOT's funding mechanisms have been recently
made public, or have changed over the last three years.
Moreover, defendants had filed motions to dismiss the First
Amended Complaint raising the same objections before relator
filed his Second Amended Complaint.  He has already been given
an opportunity to mold his factual allegations into a viable

_____

because they have been asserted without any evidentiary
support.

15

FCA case.  His attempt to do so has failed.  This is not the
fault of relator; this is simply not an FCA case -- it is a
case about the defrauding and corruption of PennDOT, not of the
Federal government.

### 2.  Federal Government Agent

Nor has relator sufficiently alleged that PennDOT is the
agent of U.S. DOT.  Although relator states in his Second
Amended Complaint that PennDOT "was acting as the agent of the
[U.S. DOT]", he provides no facts to support such a conclusory
allegation, and, thus, we need not accept it as true.  Morse,
132 F.3d at 906.  In fact, the factual allegations included in
the Complaint show the opposite to be true.  Relator claims
that PennDOT operates, and disburses funds, pursuant to PennDOT
contracts, policies, specifications, and directives.  Although
relator reproduces a section of the Code of Federal Regulations
in his Complaint, this alone cannot support his agency
allegation.  Being subject to a Federal regulation does not
make one an agent of the Federal government.  There are simply
no allegations explaining how the U.S. DOT controls PennDOT's
operations.

The only relationship alleged in the Complaint between
the two entities is that one provides funding to the other.

Federal funding does not make one an agent of the Federal government.  If it did, then any state, local, or private entity receiving Federal funds would be transformed into the Federal government.  That is an untenable result.

Because relator has not alleged facts showing that PennDOT performs its services on behalf of and subject to the control of the U.S. DOT, he cannot rely on an agency theory to transform PennDOT claims, approvals, allowances, payments, or conspiracies into U.S. DOT claims, approvals, allowances, payments, or conspiracies.

We also find it unnecessary to allow relator yet another opportunity to amend his complaint.  Had there been a good faith basis to assert facts regarding an agency relationship between PennDOT and U.S. DOT, relator had the chance to do so at a much earlier time in the litigation.

### 3.   FHA Inspectors

Finally, relator claims that he can satisfy the FCA's requirement that Federal claims, payments, allowances, approvals, or conspiracies be involved in his case because Federal Highway Administration inspectors review PennDOT project sites and log books.  Assuming that this is, in fact, true, as we must, relator has provided no facts that would

17

allow us to reach this conclusion.

Relator does not allege the key facts related to such reviews -- whether resumes and pay rate information were reviewed by the inspectors, for the purpose of paying or approving demands for money from the Federal government.  A Federal official's presence at a project site does not, of itself, amount to a demand for payment from the Federal government, or an approval or allowance of the same.  This bald allegation is simply relator's attempt to fit this case into the confines of the FCA.  He cannot do so, because, as we have stated above, this is simply not an FCA case.  Again, an opportunity to amend is unnecessary under the circumstances.

IV.   CONCLUSION

For the reasons stated above, relator's complaint is defective as it alleges no involvement of the Federal government in the payment, approval, or allowance of false claims, and no conspiracy to defraud the Federal government in relation thereto.  Relator has been given opportunities to remedy these same defects in the past, but has been unsuccessful in his attempts to turn this state agency fraud case into an FCA case.  As such, defendants' motions to dismiss will be granted, with prejudice.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,        )
*ex rel.* AUGUST W. ARNOLD,      )
          Plaintiff,             )
                                 )
     v.                          )   Civil Action No.   03-1580
                                 )
ALLEGHENY GENERAL HOSPITAL       )
          Defendant.             )

## ORDER

AND NOW, this 6th day of February, 2007, IT IS HEREBY

ORDERED that defendants' motions to dismiss [doc. nos. 160,

162, 163, 165, 167, 170, and 173] are GRANTED.  Relator's

Complaint is dismissed with prejudice.

     Defendant's motion to dismiss [doc. no. 169] is deemed

MOOT.

     The Clerk of Court is directed to mark this case CLOSED.

BY THE COURT:

_____, J.

cc:   All Counsel of Record

19