IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES DEPARTMENT OF      )
TRANSPORTATION, ex rel.          )
AUGUST W. ARNOLD,                )
                                 )
            Plaintiffs,          )
                                 )  Civil Action No. 03-1580
       v.                        )
                                 )
CMC ENGINEERING, et al.          )
                                 )
            Defendants.          )

MEMORANDUM

Gary L. Lancaster,                          September **28**, 2010
Chief Judge.

         This is a <u>qui tam</u> action under the Federal False Claims
Act ("FCA"), 31 U.S.C. §§ 3729-3732. August W. Arnold ("relator")
alleges that defendants falsified credentials of their consultants
in order to obtain higher pay rates and other benefits for those
consultants.  Defendants are several engineering and consulting
firms that provided services to the Pennsylvania Department of
Transportation ("PennDOT") on road and bridge projects for which
PennDOT received federal funding.

         Specifically, relator, a PennDOT employee who reviewed
the credential of defendants' consultants, alleges that defendants
presented false claims to the federal government when defendants
obtained inflated pay rates for their unqualified consultants on
PennDOT's federally funded projects.  Relator seeks damages on

behalf of the United States, a portion of which will be payable to him should he prevail in this case.

Although a majority of defendants have filed their own motions, for the most part, defendants make similar arguments. Defendants contend that relator cannot satisfy numerous statutory and jurisdictional requirements under the FCA. Defendants also argue that relator has insufficiently pled his fraud and conspiracy claims against them. Relator claims he has satisfied all statutory requirements and has included sufficient detail in his third amended complaint. Relator argues, therefore, that the motions to dismiss should be denied.

Before the court are defendants' eight (8) motions to dismiss the third amended complaint. [Doc. Nos. 232, 235, 239, 241[1], 243, 245[2], 249, 251[3]]. Additionally, defendant McTish, Kunkel, & Associates has filed a motion for summary judgment [Doc. No. 252][4].

---

1. Defendant SAI Consulting Engineers, Inc. joined the motion to dismiss filed by defendant L. Robert Kimball & Associates, Inc. [Doc. No. 256].

2. Defendant SAI Consulting Engineers, Inc. joined the motion to dismiss filed by defendant Michael Baker Jr., Inc. [Doc. No. 256].

3. Defendant VE Engineering, Inc. joined the motions to dismiss filed by defendant L. Robert Kimball & Associates, Inc. and defendant Michael Baker Jr., Inc. [Doc. Nos. 241 and 245].

4. Relator has conceded that defendant McTish, Kunkel, & Associates' motion for summary judgment should be granted. [Doc. (continued...)

For the reasons set forth below, defendants Erdman Anthony Associates, Inc.'s ("Erdman"), L. Robert Kimball & Associates, Inc.'s ("Kimball"), and VE Engineering, Inc.'s ("VE") motions to dismiss will be granted because relator's allegations against these defendants do not satisfy the jurisdictional requirements of the FCA. Defendants CMC Engineering's ("CMC"), Mackin Engineering's ("Mackin"), Michael Baker Jr., Inc.'s ("Baker"), M.A. Beech's ("Beech"), and SAI Consulting Engineers, Inc.'s ("SAI") motions to dismiss will be denied, without prejudice.

## I. FACTUAL BACKGROUND

Relator's uncontroverted factual allegations follow, unless otherwise indicated. Relator is a former employee of PennDOT. Relator conducted field audits of consultants hired to work on PennDOT construction projects. Relator discovered during his audits that approximately twenty-five (25) percent of the consultants whose billings he reviewed lacked the proper credentials. PennDOT paid these consultants at higher rates than they were qualified to receive as a result.

---

4. (...continued)
No. 266]. Relator's concession with regard to the motion for summary judgment also renders defendant McTish, Kunkel, & Associates' motion to dismiss moot. [Doc. No. 243].

Relator reported his findings to his supervisor. When no action was taken, he reported his findings to PennDOT's central office. When no action was taken there, relator reported his findings to the Pennsylvania Inspector General's office. When no action was taken there, relator reported his findings to the United States Department of Transportation ("U.S. DOT"). A U.S. DOT official met with relator in May, 2001 to investigate the matter. After the U.S. DOT official's visit, PennDOT conducted its own internal investigation, which revealed that out of 600 consultants reviewed, 139 of them had flawed credentials.

Defendants Erdman, Kimball, and VE entered into contractual agreements with PennDOT to provide engineering and consulting services on road and bridge projects for which PennDOT received federal funding. Defendants Erdman, Kimball, and VE are not mentioned in relator's audits. PennDOT uncovered the alleged false credentials of consultants working for defendants Erdman, Kimball, and VE during its internal investigation.

Defendants CMC, Mackin, Baker, Beech, and SAI also entered into contractual agreements with PennDOT to provide engineering and consulting services on road and bridge projects for which PennDOT received federal funding. Relator reviewed the resumes of consultants that were employed by defendants CMC, Mackin, Baker, Beech, and SAI during his audits. Relator conducted audits of these defendants prior to PennDOT's internal

4

investigation, and prior to PennDOT's public disclosure that a large number of consultants working under contract with PennDOT had flawed credentials.

Relator alleges that PennDOT permitted defendants to submit false credentials for their consultants because PennDOT officials were corrupt. Specifically, relator alleges that there was a conspiracy between PennDOT and defendants to engage in a pattern of prohibited gift giving in exchange for favored treatment in the hiring of unqualified personnel.

## II. PROCEDURAL BACKGROUND

On February 6, 2007, this court granted defendants' motions to dismiss and dismissed relator's second amended complaint because relator had failed to establish a claim against any defendant under the FCA. [Doc. No. 193]. This court found that relator's complaint was defective because it failed to allege involvement of the federal government with regard to payment, approval, or allowance of false claims. [Id.]. The alleged false claims relator discovered were held to be made against the state governmental agency PennDOT. [Id.].

On May 5, 2009, the Court of Appeals for the Third Circuit vacated the February 6, 2007 order and remanded the matter for further proceedings in light of the United States Supreme Court decision, Allison Engine Co., Inc. v. U.S. ex rel. Sanders, 553

U.S. 662 (2008).  U.S. Dept. of Transportation, ex rel. Arnold v.
CMC Engineering, 564 F.3d 673, 679 (3d Cir. 2009).  The court of
appeals held that Allison Engine allows FCA liability to exist if
the federal government is found to be sufficiently involved in the
state's disbursement of federal funds.  Id.

The court of appeals examined whether this court
properly determined that because relator alleged that the false
claims were presented to a state agency, and not the federal
government, his claims were not actionable under the FCA.  Id. at
676.  The court of appeals stated that if the federal government
was involved in the disbursement of funds from a state agency, such
as PennDOT, to defendants, then it is possible that relator's
claims were actionable depending upon the circumstances surrounding
the federal government's involvement.  Id. at 679.

Relator was granted leave to file a third amended
complaint in light of the Allison Engine decision and the enactment
of the Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, 123
Stat. 1617 (May 20, 2009), which was passed by Congress following
the Allison Engine decision.  [Doc. No. 206].


III. STANDARD OF REVIEW

Defendants have filed motions to dismiss the third
amended complaint pursuant to Fed. R. Civ. P. 9(b), Fed. R. Civ. P.
12(b)(1), and Fed. R. Civ. P. 12(b)(6).

6

Under Rule 9(b) all averments of fraud must be stated with particularity. Averments under the False Claims Act must meet the heightened pleading standards of Rule 9(b). <u>U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.</u>, 149 F.3d 227, 234 (3d. Cir. 1998). The purpose of Rule 9(b) is to "provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1418 (3d Cir. 1997). Rule 9(b) can be satisfied by describing the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into the fraud allegations. <u>Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 173 n. 10 (3d Cir. 2002).

When a court considers a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the first question is whether defendant is making a facial or factual jurisdictional attack. <u>CNA v. U.S.</u>, 535 F.3d 132, 139 (3d Cir. 2008). In a facial jurisdictional attack, where defendant asserts that the allegations of the complaint are insufficient to establish jurisdiction, the court may only consider the allegations of the complaint, and must do so in the light most favorable to plaintiff.

<u>U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 513 (3d Cir. 2007).

In a factual jurisdictional attack, where defendant argues that the court lacks jurisdiction based on evidence outside of the pleadings, the court may "consider and weigh evidence outside the pleadings...." <u>Id</u>. at 514. The burden of proof is on plaintiff to establish jurisdiction. <u>Id</u>. Thus, when presented with a factual 12(b)(1) motion, the court need only accept plaintiff's uncontroverted allegations as true. <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing <u>Gibbs v. Buck</u>, 307 U.S. 66, 72 (1939)). In short, a facial attack "concerns an alleged pleading deficiency." <u>CNA</u>, 535 F.3d at 139 (citation and internal quotation omitted). A factual attack, however, concerns "the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." <u>Id</u>. (citation and internal quotation omitted).

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>,

8

550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss

9

should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8.

"Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to disposition on the merits." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d. Cir. 2010) (citation and internal quotation omitted). Thus, we will first address defendants' motions to dismiss with respect to the jurisdictional bar of the FCA raised under Rule 12(b)(1).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction Under The FCA

Defendants make a factual jurisdictional challenge. Defendants contend that relator's claims fail to comport with the FCA jurisdictional requirements. See Atkinson, 473 F.3d at 514 (holding that the district court correctly found that the Rule 12(b)(1) challenge was factual as it concerned relator's failure to comport with the jurisdictional prerequisites contained in the FCA).

> Section 3730(e)(4) of the FCA provides that:
>
> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or

> Government Accounting Office report,
> hearing, audit, or investigation, or from
> the news media, unless the action is
> brought by the Attorney General or the
> person bringing the action is an original
> source of the information.
>
> (B) For purposes of this paragraph,
> "original source" means an individual who
> has direct and independent knowledge of
> the information on which the allegations
> are based and has voluntarily provided the
> information to the Government before
> filing an action under this section which
> is based on the information.

31 U.S.C. § 3730(e)(4).[5]

We must determine whether this court, being of limited

jurisdiction, has the power to hear this case. Zambelli, 592 F.3d

at 418. We will consider and weigh evidence outside of the

pleadings to evaluate defendants' jurisdictional challenge.

Atkinson, 473 F.3d at 514. The Court of Appeals for the Third

Circuit stated that:

> The jurisdictional requirements of the FCA
> involve assessing whether the allegations
> and transactions constituting the bases of
> the claims were publicly disclosed and
> whether, if they were, the relator is an
> original source--meaning that he has
> direct and independent knowledge of the
> information. 31 U.S.C. §§

5. This provision has been amended by the Patient Protection and
Affordable Care Act, Pub. L. 111-148, § 10104(j)(2), 124 Stat.
119 (March 23, 2010). The amendment was not made retroactive;
therefore, the new statutory language will not be addressed. See
U.S. ex rel. Kirk v. Schindler Elevator Company, 601 F.3d 94, 103
(2d Cir. 2010) (citing Graham County Soil & Water Conservation
Dist. v. U.S. ex rel. Wilson, 130 S.Ct. 1396, 1400 n.1 (2010)).

> 3730(e)(4)(A)-(B). If a relator gets over
> these hurdles, he must then make his
> substantive case.

Id. at 515.

We will now consider whether relator has met his burden
and set forth sufficient allegations to satisfy the jurisdictional
requirements under the FCA.

### 1. Public Disclosures

PennDOT and the news media publically disclosed the
information that relator based his allegations upon before relator
filed this action.    [Doc. Nos. 30-6 and 90-2].   News media
disclosures are public disclosures under section 3730(e)(4)(A) of
the FCA.  The United States Supreme Court held that audits by state
and local entities, such as those performed by PennDOT in this
case, are also public disclosures.  Graham County Soil and Water
Conservation District v. U.S. ex rel. Wilson, 130 S.Ct. 1396, 1411
(2010).

Relator acknowledges relying on these public
disclosures in his brief in opposition to defendants' motions to
dismiss. [Doc. No. 267, pgs. 16-17].  Relator contends, however,
that his claims against defendants are not subject to the FCA
jurisdictional bar because he is an original source of the
underlying information.  Defendants argue that relator cannot be
considered an original source because he acquired his knowledge,
forming the bases of his allegations, from PennDOT's internal

investigation and the news media. Furthermore, defendants argue that relator did not voluntarily provide this information to the federal government.

### 2. Original Source - Direct and Independent

#### i. Erdman, Kimball, and VE

Relator cannot be considered an original source of the alleged false claims unless he had both direct and independent knowledge. 31 U.S.C. § 3730(e)(4)(B). "Independent knowledge is knowledge that does not depend on public disclosures...[d]irect knowledge is knowledge obtained without any intervening agency, instrumentality or influence...." Atkinson, 473 F.3d at 520 (citations and internal quotations omitted). The FCA encourages those with independent and direct knowledge of fraudulent conduct to come forward. Id.

Relator alleges that his knowledge came from his audits of consultants' credentials, and was not dependent upon any public disclosures. Relator also alleges that his knowledge was obtained without reliance upon any intervening source. First, we note that defendants Erdman, Kimball, and VE, are not mentioned in relator's audits. [Doc. No. 31, ex. A]. Second, relator acknowledges that PennDOT uncovered the alleged misrepresentations of defendants Erdman, Kimball, and VE during PennDOT's internal investigation in his third amended complaint. [Doc. No. 210].

13

We find that relator did not have direct and independent knowledge of defendants Erdman, Kimball, and VE. Accordingly, he is not an original source of information as to these defendants. Relator's knowledge of defendants Erdman, Kimball, and VE is solely dependent upon PennDOT's internal investigation and public disclosures. Additionally, PennDOT's internal investigation was an intervening event between relator's original audits and relator filing this action under the FCA.

Relator argues that any defendants not included in his audits should be included under a common scheme theory. Relator argues that all defendants were part of a scheme to defraud the federal government. Relator contends that he was the original source of the information related to this scheme. Thus, relator argues that this court has subject matter jurisdiction over all defendants.

In U.S. ex rel. Paranich v. Sorgnard, 396 F.3d 326 (3d Cir. 2005), the Court of Appeals for the Third Circuit declined to address the question of whether a relator, who has knowledge of a fraudulent scheme, can state a claim against a defendant when that relator had no direct knowledge about that defendant's role in the scheme. Id. at 336. Relator argues that this court must answer the question left undecided about direct knowledge in Paranich if the jurisdictional bar under the FCA is to apply in this case. We find that it is unnecessary to determine whether a common scheme

theory is applicable under the jurisdictional requirements of the FCA because relator cannot establish he was an original source.

Relator must show his knowledge of the alleged fraud was both direct and independent to be an original source. 31 U.S.C. § 3730(e)(4)(B). Relator alleges a common scheme among these defendants in an effort to allege direct knowledge of defendants' false claims. Relator must also allege that he had independent knowledge of information supporting the allegations against defendants Erdman, Kimball, and VE to meet his burden under the FCA. The record shows that relator's knowledge of defendants Erdman, Kimball, and VE was dependent upon public disclosures made subsequent to the internal investigation conducted by PennDOT.

Based on the foregoing, we find that relator was not an original source of information supporting the allegations against defendants Erdman, Kimball, and VE. We must dismiss the claims against these defendants for lack of subject matter jurisdiction under the FCA. Relator's third amended complaint will be dismissed with prejudice as to these defendants.

ii. CMC, Mackin, Baker, Beech, and SAI

Relator directly reviewed the credentials of consultants that worked for defendants CMC, Mackin, Baker, Beech, and SAI. Relator conducted audits of these defendants prior to PennDOT's public disclosure of its findings from the internal investigation. Relator has established that his knowledge of

15

defendants CMC, Mackin, Baker, Beech, and SAI is both direct and independent. We must now determine whether relator acted voluntarily when he provided his information to the federal government.

### 3. Original Source - Voluntary

Relator must show that he voluntarily provided the federal government with the information of defendants' false claims to be considered an original source under the FCA. 31 U.S.C. § 3730(e)(4)(B). Defendants argue that relator's audits were not voluntary because his position at PennDOT specifically required him to review the credentials of defendants' consultants. Moreover, defendants argue that relator was bound by his employment duties to disclose any potential fraud or inaccuracies found during his audits. Relator contends that his audits were performed independently and were not related to, or required by, his employment with PennDOT. Relator further contends that his position with PennDOT did not require him to disclose his findings to the federal government.

Analysis of voluntary disclosures under the FCA jurisdictional bar is limited. In Paranich, the Court of Appeals for the Third Circuit discussed voluntarily providing information to the government prior to filing a qui tam action. However, Paranich involved a situation where the relator was a part of the fraudulent claims that were presented to the government, and had

16

submitted documents to the government only after being served with a grand jury subpoena.  <u>Paranich</u>, 396 F.3d at 329.  The court of appeals held that where the government identifies a relator as being involved with the fraud, and initiates contact with that relator through a subpoena, that relator's actions are not voluntary.  <u>Id</u>. at 340.

        In <u>Paranich</u>, the court of appeals relied upon <u>U.S. ex rel. Fine v. Chevron USA, Inc.</u>, 72 F.3d 740 (9th Cir. 1995) for guidance.  In <u>Fine</u>, relator was a former employee of the Office of the Inspector General at the U.S. Department of Energy.  <u>Id</u>. at 741.  Relator was required to supervise and edit audit reports that other employees had written.  <u>Id</u>.  Relator became disgruntled after his supervisors either could not or would not take action against the violations he brought to their attention, so he filed several <u>qui tam</u> actions under the FCA following his retirement.  <u>Id</u>. at 742.

        In <u>Fine</u>, the Court of Appeals for the Ninth Circuit discussed that the paradigm <u>qui tam</u> case involved a private individual who became aware of fraud against the government and brought such information forward.  <u>Id</u>. at 742.  The court of appeals held that when a relator is a federal governmental employee, whose position specifically holds the responsibility of disclosing fraud to his supervisors, that relator's actions cannot be considered voluntary.  <u>Id</u>. at 745.

After reviewing _Fine_, the Court of Appeals for the Third Circuit in _Paranich_ concluded that a relator's actions are not voluntary when he provides information to the government after being served with a subpoena. _Paranich_, 396 F.3d at 340. In comparing the relator in _Paranich_ to other situations, the court of appeals stated:

> In such a case, <u>as with cases involving federal employees charged with investigating fraud</u>, and with cases involving complacent, reluctant, or delinquent informants, the incentive of a qui tam action as an anti-fraud device is lost and the putative relator's further participation in the government's investigation is necessarily fueled by other forms of self-interest.

_Id_. at 340-41 (emphasis added).

Here, relator is a state government employee. Relator's audits indicate that his position with PennDOT involved reviewing the credentials of defendants' consultants. [Doc. No. 31, ex. A]. However, unlike the government employee in _Fine_, relator is not a federal employee. He was employed by the State of Pennsylvania. Defendants argue that relator's audits were not voluntary because he was bound by his employment duties to disclose any potential fraud or inaccuracies found during his audits; however, defendants cite no case where the holding in _Fine_ was applied to state employees. Relator was paid to disclose any fraud or inaccuracies to state officials at PennDOT, not to U.S. DOT. Relator voluntarily provided his findings of fraud to the federal

government, therefore, he is an original source under section 3730(e)(4)(B).

   B. <u>CMC, Mackin, Baker, Beech, and SAI's Motions to Dismiss Pursuant to Rules 9(b) and 12(b)(6)</u>

Relator brings his case under sections 3729(a)(1), (a)(2), and (a)(3)[6] of the FCA. These sections provide for liability against:

> (a) Any person who--
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;[7]

---

6. Relator has withdrawn his claim under section 3729(a)(7) of the FCA. [Doc. No. 267, pg. 4 n. 5].

7. The Fraud Enforcement and Recovery Act (FERA) of 2009, Pub. L. No. 111-21, 123 Stat. 1617, (May 20, 2009), amended the FCA and re-designated sections 3729(a)(1), (a)(2), and (a)(3) as sections 3729(a)(1)(A), (a)(1)(B), and (a)(1)(C). Relator contends that the amended version of section 3729(a)(2), which is section 3729(a)(1)(B), applies retroactively in this case. Section 4(f)(1) of FERA states that new section 3729(a)(1)(B) applies to all claims under the FCA pending on or after June 7, 2008. The plain meaning of section 4(f) of FERA indicates that "claims" refers to claims for payments and not cases pending under the FCA. Thus, the amended version of section 3729(a)(2) does not apply to the claims involved in this case. <u>See</u> <u>U.S. ex rel. Thomas v. Siemens AG</u>, 2010 WL 1688582, at *4 n. 6 (E.D. Pa. April 23, 2010); <u>U.S. v. Chubb Institute</u>, No. 06-3562, 2010 WL 1076228, at *4 n. 10 (D.N.J. March 22, 2010); U.S. v. Albinson, No 09-1791, 2010 WL 3258266, at *8-9 (D.N.J. August 16, 2010).

> (3) conspires to defraud the Government by
> getting a false or fraudulent claim
> allowed or paid.

31 U.S.C. § 3729(a).

Defendants contend that relator's FCA claims fail to meet the particularity requirements for allegations of fraud pursuant to Federal Rule of Civil Procedure 9(b). More specifically, defendants contend that relator has not produced any evidence of identifiable fraudulent claims being made against the federal government, and that relator's allegations do not demonstrate that the defendants intended to defraud PennDOT, much less the federal government. Relator contends that he has alleged with sufficient particularity that defendants engaged in a scheme where they falsely inflated the credentials of their consultants, and intended that those consultants would be paid at a higher rate than they were qualified to receive in order to induce payments from the federal government through PennDOT.

The United States Supreme Court found that there is no liability under the FCA if false claims are made to a private entity to induce payments of federal funds over which that entity has complete control. <u>Allison Engine</u>, 553 U.S. at 671-672. However, the Supreme Court found that FCA liability may exist if the federal government is involved in the private entity's disbursement of federal funds. <u>Id</u>. As an example, the Supreme Court stated that liability may exist where a "subcontractor

submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." Id.

Relator's claims against defendants in this case mirror the example provided by the Supreme Court in Allison Engine with the exception that PennDOT is a governmental agency and not a private entity. The United States Court of Appeals for the Third Circuit found that the distinction between a public grantee versus a private grantee is not significant in assessing relator's claims under the FCA. Arnold, 564 F.3d at 679.

With regard to whether relator's claims were made with requisite particularity, we note that relator's third amended complaint includes information regarding the federal government's review and approval of claims for payment sent by PennDOT. The federal government's review and approval of claims for payment occurred subsequent to PennDOT's receipt of bid submissions from defendants, which relator alleges include the falsely inflated credentials. Furthermore, relator's audits conducted during the time period of 2000 to 2002 support his allegations that defendants' bid submissions to PennDOT included falsely inflated credentials for their consultants. Finally, PennDOT's internal investigation supports relator's allegations that defendants overcharged for the work done by a large number of their consultants by engaging in a scheme where they falsely inflating

their consultants' credentials when submitting bids on federally funded road and bridge projects.

Based on the foregoing, we find that relator has alleged with requisite particularity that defendants engaged in a scheme where they submitted falsely inflated credentials for their consultants to PennDOT, and intended to induce fraudulent payments from the federal government through PennDOT. Defendants CMC, Mackin, Baker, Beech, and SAI motions to dismiss will be denied, without prejudice to their right to file motions for summary judgment reasserting their defenses upon a more completed record.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES DEPARTMENT OF    )
TRANSPORTATION, ex rel.        )
AUGUST W. ARNOLD,              )
                               )
          Plaintiffs,          )
                               )  Civil Action No. 03-1580
     v.                        )
                               )
CMC ENGINEERING, et al.        )
                               )
          Defendants.          )

## ORDER

AND NOW, this 28th day of September, 2010, IT IS HEREBY
ORDERED that defendants Erdman Anthony Associates, Inc., L. Robert
Kimball & Associates, Inc., and VE Engineering, Inc.'s motions to
dismiss [Doc. Nos. 232, 241, and 251] are GRANTED. Relator's third
amended complaint is dismissed with prejudice as to these
defendants.

IT IS FURTHER ORDERED that defendant McTish, Kunkel &
Associates' motion for summary judgment [Doc. No. 252] is GRANTED;
therefore, defendant McTish's motion to dismiss [Doc. No. 243] is
DENIED AS MOOT.

IT IS FURTHER ORDERED that defendants CMC Engineering,
Mackin Engineering, Michael Baker Jr., Inc., M.A. Beech, and SAI
Consulting Engineers, Inc.'s motions to dismiss [Doc. Nos. 235,
239, 245, and 249] are DENIED, without prejudice to their right to

23

file a motion for summary judgment reasserting their defenses upon a more completed record.

BY THE COURT:

_____, C. J.

cc:     All Counsel of Record